UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK JACKSON,<br><br>        Plaintiff,<br><br>    v.<br><br>L. SMALLEY, et al.,<br><br>        Defendants. | CASE No. 1:17-cv-00110-MJS (PC)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>(ECF No. 1)<br><br>THIRTY (30) DAY DEADLINE |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. His complaint is before the Court for screening.

**I.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court

determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. Plaintiff's Allegations

Plaintiff is incarcerated at California State Prison – Sacramento, but complains of acts that occurred at North Kern State Prison ("NKSP"). He names the following defendants: (1) Correctional Officer ("CO") L. Smalley, (2) CO C. Santos, (3) CO S.

Copeland, (4) Appeals Coordinator Jackson, (5) Psychologist M. Girourd, (6) Psychologist N. Nikkel, (7) Warden Kelly Santoro.

Briefly stated, Plaintiff alleges that Defendant Smalley and others conspired to write false rules violation reports regarding Plaintiff in order to have Plaintiff transferred to another prison. Based on Plaintiff's complaint and documents attached thereto, his allegations may be summarized essentially as follows:

On November 2, 2015, Plaintiff moved into Building 4 on the A-Yard due to cell mate incompatibility. Building 4 is a disciplinary building and half of Building 4 is disciplinary housing for inmates designated on C-status. Defendant Smalley is primarily in charge of Building 4.

. On November 3, 2015, Plaintiff moved to the non-segregated side of Building 4. On November 4, 2015, Inmate McClaren was moved into Plaintiff's cell due to his need for a lower bunk.

On November 5, 2015, Plaintiff spent several hours working out on the yard. Upon returning to the building, he was not permitted to re-enter, apparently because he did not arrive in time. He asked to speak with a sergeant but instead four unnamed officers detained Plaintiff in a cage. According to Plaintiff, this conduct was intended to intimidate him.

During this time, Plaintiff's cell was apparently searched and inmate-manufactured alcohol reportedly was found therein. Plaintiff's cell mate was taken to Administrative Segregation for allegedly having threatened Defendant Smalley. On November 17, 2015, Plaintiff received a serious Rules Violation Report ("RVR") for Possession of Inmate Manufactured Alcohol. This charge was fabricated. It was made in retaliation for Plaintiff "exercising his right to seek remedy from A-Yard Sgt. As

3

encouraged by administration."[1] On November 22, 2015, a hearing was held on the RVR. Plaintiff was found guilty. Plaintiff was assessed 120 days forfeiture of credits.

On December 4, 2015, Plaintiff received his copy of the RVR report and filed an appeal. On December 11, 2015, his appeal was cancelled as untimely. This cancellation was the beginning in a string of harassment by Defendant Smalley. Plaintiff appealed the cancellation to the third level but his appeal was denied.

On December 19, 2015, Plaintiff filed a complaint against Defendant Smalley "after having the door opened while Plaintiff was asleep to rip pictures of [his] wall." On January 8, 2016, Plaintiff was interviewed in relation to this appeal by Defendant Santos. Santos was Smalley's supervisor and thus was investigating his "own crimes." Santos denied the appeal at the first level. The appeal also was denied at the second level. It was rejected at the third level as lacking necessary documents.

On January 29, 2016, Plaintiff got into a fight with his cell mate due to "the ongoing harassment affecting his life and peace of mind." Plaintiff received an RVR for Fighting, was found guilty, and was assessed 61-days loss of credits.

On February 11, 2016, Plaintiff received a RVR from Smalley for Willfully Delaying a Peace Office for refusing a cell mate. According to Plaintiff, the proposed cell mate was targeted for assault on A-Yard. Plaintiff was found not guilty and the RVR was dismissed.

On February 19, 2016, Smalley again searched Plaintiff's cell. Defendant "demanded" to be moved out of Building 4 because it was "obvious harassment would not end."

On March 10, 2016, Plaintiff attended his annual Classification Committee meeting. He was told that he would continue to be housed in Building 4 due to the RVRs

---

[1] This allegation is contained in Plaintiff's complaint. However, in Plaintiff's administrative appeal, he alleged that the facts underlying the RVR were fabricated because Smalley had other issues with Inmate McClaren.

4

for fighting and inmate manufactured alcohol, and would be recommended for transfer to a higher custody prison.

Plaintiff was overwhelmed and demanded to speak with a mental health clinician. He spoke with Defendant Girourd. He explained that he feared for his life and feared continued harassment by Smalley. Girourd spoke with administration and Plaintiff was placed in Administrative Segregation.

On March 15, 2016, Plaintiff received an RVR for Threatening to Cause Serious Bodily Injury to a Public Official, i.e., Smalley. This falsified report was written by Girourd. Therein, Girourd wrote that Plaintiff stated he was going to "take [Smalley's] fucking head off" with a "piece of plastic or something." According to Girourd, Plaintiff was advised of the consequences of making such actions and said, "I don't care, I have to get off this yard and I just threatened staff."

After receiving this RVR, Plaintiff went on a hunger strike and was placed on suicide watch. On March 17, 2016, Plaintiff was transferred to a California Health Care Facility for mental health reasons. On March 28, 2016, his level of care was reduced and he was transferred to California Men's Colony ("CMC"). Due to (1) the pending RVR for threatening Smalley, (2) Plaintiff's custody and security level, and (3) CMC being unable to meet Plaintiff's housing and programming needs, Plaintiff was placed in administrative segregation pending review by the Institutional Classification Committee ("ICC").

On May 7, 2016, Plaintiff attended a disciplinary hearing on the charge of Threatening to Cause Serious Bodily Injury to a Public Official. He was found guilty of the reduced charge of Threatening Staff.

Plaintiff alleges conspiracy, First Amendment retaliation, and violation of his due process rights. He seeks monetary relief.

**IV.   Analysis**

    **A.   Linkage**

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons

v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's complaint does not state any facts regarding Defendants Copeland, Jackson, Nikkel or Santoro. He stated conclusory allegations that Copeland and Nikkel failed to intervene regarding Girourd's false report, and Santoro failed to intervene regarding all of the complaint's allegations. He alleges that Jackson illegally cancelled Plaintiff's appeals. These conclusory allegations fail to state a claim. Plaintiff must allege specific facts to show that each Defendant participated in a violation of his rights, or knew of violations by failed to act. He will be given leave to amend.

**B.   Exhaustion of Administrative Remedies**

It appears from the face of the complaint and the documents attached thereto that Plaintiff has not exhausted administrative remedies regarding all of his claims.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S.

6

731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney, 311 F.3d at 1199.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate...can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit his appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and exhausts a prisoner's administrative remedies. See id.

The PLRA, however, does not require exhaustion when circumstances render administrative remedies effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)); see also Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (exhaustion not required where prison officials failed to give grievance forms to Plaintiff); Dole v. Chandler, 438 F.3d 804, 809, 811 (7th Cir. 2006) (prison officials' failure to respond to properly filed grievance made exhaustion effectively unavailable).

"[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216. The PLRA's exhaustion requirement is not jurisdictional; it creates an affirmative defense that defendants must plead and prove. Id. However, "in those rare cases where a failure to exhaust is clear from the face of the complaint," dismissal for failure to state a claim is appropriate, even at the screening

stage. Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014). See also Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (stating that "[a] prisoner's concession to nonexhaustion is a valid ground for dismissal"), overruled on other grounds by Albino, 747 F.3d at 1166; Sorce v. Garikpaetiti, 2014 WL 2506213 (S.D. Cal. June 2, 2014) (relying on Albino and dismissing the complaint on screening because "it is clear from the face of [plaintiff's] pleading that he has conceded that he failed to exhaust all available administrative remedies . . . before he commenced this action").

Here, records before the Court suggest that Plaintiff did not exhaust administrative remedies relating to the RVR for inmate manufactured alcohol. Plaintiff's initial appeal was cancelled at the first level on the ground that it was untimely. Specifically, the prison construed the appeal as seeking relief from Smalley's November 5, 2015 RVR charge and cell search that allegedly revealed inmate manufactured alcohol. Because the appeal was received more than thirty days thereafter, it was untimely. Plaintiff was provided specific instructions to file a new appeal in the event he intended to appeal the RVR. Plaintiff appealed the cancellation of his initial appeal, claiming that he was not injured by Smalley's November 5, 2015 conduct until November 22, 2015, the date he was found guilty. This appeal of the cancellation was unsuccessful.

Plaintiff also submitted a December 19, 2015 appeal regarding the RVR for inmate manufactured alcohol, Smalley's harassment, and frequent cell searches. This appeal was rejected at the third level because Plaintiff failed to include required documents. Plaintiff was instructed to cure the defects and resubmit the appeal. Nothing in the record before the Court suggests that he did so. There appears to be no decision on the merits of the appeal at the third level of review. Thus, it appears that Plaintiff failed to exhaust administrative remedies as to these claims.

Plaintiff's failure to exhaust these claims is plain from the face of the complaint and renders the claims subject to dismissal. Plaintiff will be given leave to amend. If he chooses to do so, he should plead facts to show that he pursued appeals of these issues through three levels of review, or to suggest there is reason to believe that administrative

remedies were effectively unavailable to him.

Facts regarding Plaintiff's subsequent appeals are somewhat murkier. His efforts to exhaust were complicated by his transfer to another institution. The records before the Court do not clearly demonstrate that Plaintiff failed to exhaust his remaining claims. The Court will not dismiss these claims at the screening stage.

### C. Due Process

Plaintiff claims that Smalley and Girourd violated his due process rights by issuing false RVRs.

The creation of false disciplinary reports, standing alone, is not actionable under § 1983 because falsely accusing an inmate of misconduct does not violate a right secured by the Constitution or laws of the United States. See Hernandez v. Johnston, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); Solomon v. Meyer, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges."); Johnson v. Felker, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983.") (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d. Cir. 1986)). Instead, "Plaintiff's protection from the arbitrary action of prison officials lies in the procedural due process requirements as set forth in Wolff v. McDonnell." E.g., Ellis v. Foulk, No. 14-cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)); Toscano v. Lewis, No. C-12-5893 EMC PR, 2013 WL 1632691, at *6 (N.D. Cal. Apr. 16, 2013) (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir.1989); Freeman, 808 F.2d at 951; and Hanrahan v. Lane, 747 F.2d 1137, 1140–41 (7th Cir.1984)). These requirements are discussed further below.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See id. at 466-68. Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. The minimum procedural requirements that must be met in such proceedings are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is not particularly stringent and the relevant inquiry is whether "there

is any evidence in the record that could support the conclusion reached. . . ." Hill, 472 U.S. at 455-56 (emphasis added).

Plaintiff does not allege any facts regarding his disciplinary hearing or name as defendants the hearing officers. He fails to state a due process claim in relation to false disciplinary charges. He will be given leave to amend.

### D.     Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco. Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003) (finding that a prisoner establishes a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

The third prong can be satisfied by various activities. Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights litigation similarly is protected under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively show that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.

The first RVR written by Smalley appears to have preceded any protected conduct by Plaintiff. Thus, there is nothing to suggest that Smalley wrote the RVR for inmate manufactured alcohol in retaliation for Plaintiff's exercise of his First Amendment rights. Plaintiff states he believes it was written in retaliation for "exercising his right to seek remedy from A-Yard Sgt. as encouraged by administration." However, it is not clear what this refers to. Plaintiff will be given leave to amend.

Plaintiff's first protected conduct appears to have been the December 19, 2015 grievance complaining that his cell had searched and he was being harassed. Again, however, the adverse actions -- cell searches, harassment, and the RVR – preceded Plaintiff's protected conduct. There is no basis for a retaliation claim on these facts.

Plaintiff next received RVRs for fighting with a cell mate and later refusing a cell mate. However, Plaintiff appears to concede that the conduct underlying these RVRs occurred. Thus, he cannot maintain that the RVRs lacked a legitimate penological objective.

The next cell searches alleged by Plaintiff are February 19, 2016 and March 10, 2016. These are temporally remote from the December 19, 2015 administrative appeal against Smalley. Furthermore, Smalley carried out similar searches of Plaintiff's cell prior

12

to Plaintiff engaging in protected conduct. The facts as pled are insufficient to suggest that Smalley engaged in retaliatory cell searches.

Finally, Plaintiff suggests that Girourd wrote an RVR out of retaliation. However, there is nothing to suggest that Girourd knew of Plaintiff's grievances against Smalley or took action against Plaintiff on that basis. Furthermore, it appears that Plaintiff may have made exaggerated statements of his intent to harm Smalley in order to get himself removed from Building 4. While Plaintiff appears to state that he was not actually threatening Smalley, he does not explicitly deny that he made the threatening statements noted by Girourd. Thus, he fails to allege absence of a legitimate penological interest.

Plaintiff fails to state a claim for retaliation. He will be given leave to amend.

**E.     Administrative Grievances**

Plaintiff complains regarding the handling of his administrative grievances.

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, Plaintiff has no stand-alone due process rights related to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Failing to properly process a grievance does not constitute a due process violation. See, e.g., Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Williams v. Cate, No. 1:09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

The denial of a prisoner's administrative appeal generally does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, prison administrators cannot willfully turn a

blind eye to constitutional violations being committed by subordinates. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006). Thus, there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983. Those circumstances are not presented here. Plaintiff alleges no underlying constitutional violation, nor that any individual turned a blind eye to such a violation.

### F.     Conspiracy

Plaintiff claims that Defendants conspired to validate him in violation of his constitutional rights.

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). Although accepted as true, the factual allegations of the complaint must be sufficient to raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Plaintiff has not alleged sufficient facts to raise his conspiracy claim beyond the speculative level. Accordingly, his conspiracy claim is not cognizable.

### G.     Harassment

Plaintiff refers throughout his complaint to harassment. It is unclear precisely what conduct he intends to describe. Nonetheless, Plaintiff is advised that mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

### V.     Conclusion and Order

Plaintiff's complaint does not state a cognizable claim for relief. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d

14

1446, 1448-49 (9th Cir. 1987). If Plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted;
2. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint, filed January 24, 2017;

3. Within thirty (30) days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and

4. If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to comply with a court order and failure to state a claim, subject to the "three strikes" provision set forth in in 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated:   February 10, 2017          /s/ *Michael J. Seng*
                                                     UNITED STATES MAGISTRATE JUDGE